**FOR PUBLICATION**


UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
- - - - - - - - - - - - - - - - - - - - - - - - - -X
In re:

S.A. HOLDING CO., LLC, et al.,

Chapter 11

Case Nos.:
05-19874 (DHS)
05-19876 (DHS)
05-23403 (DHS)
(Jointly Administered)

Debtors.
- - - - - - - - - - - - - - - - - - - - - - - - - -X

**OPINION**


**APPEARANCES**:

Stuart Gold, Esq.
Mandelbaum, Salsburg,
Gold, Lazris & Discenza, P.C.
Attorneys for Debtors

Gary N. Marks, Esq.
Norris, McLaughlin & Marcus, P.A.
Attorneys for City of South Amboy, NJ &
City Authorities


**MICHAEL B. KAPLAN, U.S.B.J.**


**MEMORANDUM DECISION**

Currently before this Court is the motion filed by the above-captioned Debtor seeking the entry

of an order pursuant to Section 365(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq.

(the "Bankruptcy Code"), rejecting a settlement agreement with the City of South Amboy (the "City")

previously reached in related state and federal court  litigations ("Motion"). For the reasons set forth

below,  this Court finds that the subject settlement agreement, as amended by the parties, is not an

"executory contract" subject to rejection pursuant to the above-cited statute, and thus, the Debtors'

Motion is denied.

## I.       JURISDICTION

 The court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a)

and the Standing Order of the United States District Court dated July 10, 1984 referring all bankruptcy

cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. §

157(b)(2). See, e.g., In re Venture Stores, Inc., 1998 WL 748847 (Bankr. D. Del.) (motion to reject

executory contract is a core matter). The statutory predicates for the relief sought herein are § 365 of

the  Bankruptcy Code and Fed. R. Bankr. P. 6006.

## II.      FACTS AND PROCEDURAL HISTORY[1]

**Initial Litigations**

 On March 30, 2005, S.A. Holding Co., LLC ("S.A.") and Delilah's Den of S.A., Inc.

("Delilah's") each commenced bankruptcy cases by filing voluntary petitions for relief under Chapter 11

---

[1]The decade-long and tortuous procedural history of the litigation between the Debtors and the
City is not in dispute and has been set forth consistently by each party in their respective Disclosure
Statements filed in this Case under Docket No(s). 62 and 205.

of Title 11 of the United States Code (the "Bankruptcy Code"). Thereafter, on April 22, 2005, 86

Broad Street Corporation ("86 Broad", and collectively with S.A. and Delilah's, the "Debtors")

commenced a bankruptcy case by filing a voluntary petition for relief under Chapter 11 of the

Bankruptcy Code. The estates of the Debtors are being jointly administered. S.A. is a New Jersey

limited liability company that owns real property located at 3630 Route 35 North, in the City of South

Amboy, Middlesex County, New Jersey (the "Property"). Delilah's is a New Jersey corporation that

owns and operates an adult nightclub at the Property. 86 Broad is a New Jersey Corporation that owns

a currently inactive liquor license, in the City of South Amboy, Middlesex County, New Jersey, which

was previously used in connection with the club at the Property.

The Debtors and the City have been in litigation since 1995. The first lawsuit was

commenced in the Superior Court of New Jersey, Law Division, Middlesex County, involving Delilah's

and another entity known as S.A. Package Goods, Inc., (the "State Court Action"). In the State Court

Action, the City sought a determination as to whether Delilah's could continue to operate as an adult

club in South Amboy. A second action was commenced in the United States District Court for the

District of New Jersey by Delilah's and 86 Broad, followed by yet another action against the City and

its Zoning Board.

**Settlement Agreements and Enforcement Efforts**

On July 30, 1998, a settlement was reached (the "Settlement Agreement"), which authorized

Delilah's to continue to operate for two years as a "go-go club" and then revert to its prior use. On or

about September 6, 2001, the Settlement Agreement was amended to: (i) provide for the immediate

and permanent abandonment of the contested "go-go bar" use of the Property "in exchange for a 24

3

month extension of the current sexually oriented business use of the premises", (ii) authorize Delilah's

accordingly to operate for two more years as a "go-go club"; and (iii) provide for the City to designate

the property for redevelopment and establish a redevelopment plan (the "Amended Settlement

Agreement" or "Agreement")[2]. Consistent with the terms of the Amendment, on March 19, 2003, the

City placed the property in a redevelopment zone, approved a redevelopment plan and thereafter, on

December 1, 2003, adopted the redevelopment plan by enactment of an ordinance. The Debtors did

not oppose any of these actions.[3]

On November 18, 2003, the City filed a motion in the Superior Court of New Jersey to

enforce the Amendment. Specifically, the City sought to close the business as was agreed and for

payment of its counsel fees and costs. The Debtors for the first time sought to challenge the

redevelopment plan. The Superior Court entered judgment in favor of the City on December 23, 2004

and directed the business to close immediately. Among other things, the court found that the Debtors,

who had not previously objected to the proposed redevelopment plan, were now barred from doing

so[4].

On December 28, 2004, the Debtors filed a motion for leave to appeal and for emergent relief.

By Order dated January 6, 2005, the Appellate Division vacated the trial court's Order and remanded

the case for an evidentiary hearing on certain alleged breach of contract issues arising from the

---

[2]See Amendment to Stipulation of Settlement annexed as Exhibit "B" to Debtor's Motion.

[3]See ¶¶ 8,9 and 13 of the Certification of John R. Lanza, dated May 3, 2005 (hereinafter "Lanza Cert."), docket # 29, and incorporated by reference in the City's Brief in Opposition to the within Motion.

[4]See Lanza Cert., ¶¶17-19.

4

Amendment. The Appellate Division temporarily stayed the order directing the closing of the business

pending a decision on remand, thus allowing the Debtors to continue to operate. After several delays,

the evidentiary hearing on the remand to the Superior Court was to finally take place on March 31,

2005. However, the day before the hearing, on March 30, 2005, the Debtors filed voluntary petitions

for relief under Chapter 11 of the Bankruptcy Code, thereby automatically staying the final disposition

of the State Court Actions and allowing the business to continue operating.


**Post Bankruptcy Proceedings**

Immediately after filing their voluntary bankruptcy petitions, Delilah's and S.A. commenced an

adversary proceeding (the "Adversary Proceeding") in the Bankruptcy Court against the City, the City

of South Amboy Zoning Board of Adjustment, the South Amboy Redevelopment Agency and the

South Amboy Planning Board, seeking: (i) damages for violation of the Debtors' constitutional rights; (ii)

a declaratory judgment and injunctive relief; (iii) to avoid and recover an avoidable transfer; (iv)

damages; and (v) rescission of the contract. In connection with the commencement of the Adversary

Proceeding, Delilah's and S.A. filed an application for a preliminary and permanent injunction enjoining,

without limitation, the City Authorities from continuing to prosecute the State Court Action in any court

except the United States Bankruptcy Court.

Ultimately, the Bankruptcy Court entered an Order on June 20, 2005, which provides that: (i)

the Bankruptcy Court will abstain from hearing the claims raised in the litigation; (ii)

the City Authorities are authorized to proceed with the State Court Litigation against the Debtors

(including any appellate process), (iii) the Debtors are authorized to bring any and all additional claims

they have against the City Authorities; (iv) any claims brought by the Debtors against the City

Authorities would be subject to all rights and defeses the City Authorities may have under applicable

law; (v) the City Authorities are enjoined pursuant to section 105(a) of the Bankruptcy Code, from

shutting down the Debtors' business pending entry of a final non-appealable order from the trial or

appellate court(s) of competent jurisdiction conclusively and finally resolving all issues between the

parties in the litigation; and (vi) the injunction issued would remain in effect pending entry of a further

order by the Bankruptcy Court.


**Additional District and Bankruptcy Court Actions**

Notwithstanding the above-referenced order of the Bankruptcy Court, litigation between the

parties has advanced exponentially in the federal courts. To wit, On June 24, 2005, the Debtors

commenced an adversary proceeding in the Bankruptcy Court against Kara Homes Development,

LLC ("Kara Homes"), the City, South Amboy Zoning Board of Adjustment, the South Amboy

Redevelopment Agency, and the South Amboy Planning Board ("City Defendants"), seeking a

declaratory judgment and damages for the alleged interference by the City Defendants with a  Purchase

and Sale Agreement between the Debtors and Kara Homes. Additionally, on July 7, 2005, the Debtors

filed a complaint against the City, the South Amboy Zoning Board of Adjustment, the South Amboy

Planning Board, the South Amboy Redevelopment Agency, John Lanza, Director of Law of the City of

South Amboy and John O'Leary, Mayor of South Amboy, in the United States District Court ("District

Court") seeking entry of judgment, inter alia, (i) awarding Debtors' damages for violations of their rights

under the First, Fifth and Fourteenth Amendments of the United States Constitution; (ii) declaring that

6

application of N.J.S.A. 2C: 34-7 to the Debtors' Property and its business is unconstitutional; (iii)

against the City avoiding and setting aside the Amended Settlement Agreement pursuant to 11 U.S.C. §

544(b) and applicable state law; and (iv) against the City recovering the property transferred in

connection with execution of the Amended Settlement Agreement, or the value of such property,

pursuant to 11 U.S.C. § 550(a) for the benefit of the Debtors' bankruptcy estate.  Not content with

these procedural maneuvers,  the Debtors also filed a Notice of Removal in the District Court and

removed the State Court Litigation to the District Court.

     Debtors have brought the within motion seeking to reject the Agreement, pursuant to 11 U.S.C.

§ 365(a), contending that the Agreement remains executory due to the City's alleged failure to designate

the Property as an area in need of redevelopment and adopt an enhanced redevelopment plan

permitting development of high density residential housing. The City opposes such rejection, arguing

that the City has fully performed under the terms of the Agreement and thus, there is no executory

contract to be rejected under the Bankruptcy Code. Alternatively, the City argues that the Debtors

have proposed rejection of the Agreement in bad faith and in contravention of prior court orders.


## III.    DISCUSSION

     This Court notes the irony that notwithstanding the ample opportunity to litigate the propriety

and sufficiency of the City's performance under the Agreement in at least three different civil actions,

pending in both federal and state forums, the Debtors now turn to this Court to resolve such critical

issues in summary fashion as part of the within Motion. Yet, the Debtors' Chapter 11 proceedings,

along with the pending litigations, have come to a screeching halt and the prospects for progress are

dim without a resolution of the contested issues. Thus, this Court will endeavor to decide the instant

Motion, notwithstanding the sparse evidentiary record. "[A] motion to assume [or reject an executory

contract] should be considered a summary proceeding, intended to efficiently review the trustee's or

debtor's decision to adhere to or reject a particular contract in the course of the swift administration of

the bankruptcy estate. It is not the time or place for prolonged discovery or a lengthy trial with disputed

issues." In re Orion Pictures, 4 F.3d 1095, 1098-1099 (2nd Cir. 1993).

Section 365 of the Bankruptcy Code provides: "[T]he trustee, subject to the court's approval,

may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

This section enables the trustee to maximize the value of the debtor's estate by assuming executory

contracts that benefit the estate and rejecting those that do not. In re Rickel Home Centers, Inc., 209

F.3d 291, 298 (3d Cir. 2000). Although a decision to assume or reject an executory contract or

unexpired lease must be approved by the court, In re University Medical Center, 973 F.2d 1065, 1076

(3d Cir. 1992), the statute does not provide the standard to be applied by the court in determining the

propriety of such decision. Most courts, however, apply the "business judgment test." See NLRB v.

Bildisco & Bildisco, 465 U.S. 513, 523 (1984); see also, Lubrizol Enters., Inc, v. Richmond Metal

Finishers, Inc. (In re Richmond Metal Finishers, Inc.), 756 F.2d 1043, 1046-47 (4th Cir. 1985). In the

matter at bar, this Court does take issue with the Debtors' business judgment that the Agreement is not

now, or may never have been,  in the best interests of the Debtors or their estates; rather, this Court is

compelled to deny the Debtors' requested relief inasmuch as the Debtors have failed to satisfy their

burden that the Agreement remained "executory" at the time of the bankruptcy filing.

The Bankruptcy Code does not define the term "executory contract," nor does § 365(a)

indicate the phrase's intended scope. In re Columbia Gas System, Inc., 50 F.3d 233, 238 (3d Cir. 1995). The legislative history of § 365 indicates that "[t]hough there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides." Sharon Steel Corp. v. National Fuel Gas Distribution Corp., 872 F.2d 36, 39 n. 4 (3d Cir. 1989) (citing H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 347 (1977); S.Rep. No. 95-989, 95th Cong., 2d Sess. 58 (1978), reprinted in 1978 U.S.Code Cong. & Admin. News 5787, 5844, 6303). Most courts have found this definition to be too broad and sweeping. See, e.g., Sharon Steel Corp., 872 F.2d at 39. As stated by the United States Court of Appeals for the Seventh Circuit, "[t]aken literally, this definition would render almost all agreements executory since it is the rare agreement that does not involve unperformed obligations on either side." In re Streets & Beard Farm Partnership, 882 F.2d 233, 234 (7th Cir. 1989).

Recognizing that a relaxed definition of "executory" would render nearly every contract executory, the United States Court of Appeals for the Third Circuit adopted the "Countryman" definition of an executory contract. Sharon Steel Corp., 872 F.2d at 39; In re Columbia Gas, 50 F.3d at 238. Acknowledging that "[a]ll contracts to a greater or less extent are executory [and when] they cease to be so, they cease to be contracts," Professor Countryman defined an executory contract as "a contract under which the obligation of both the bankrupt and the other party to the contract are so far underperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." Countryman, Executory Contracts and Bankruptcy: Part 1, 57 Minn.L.Rev. 439, 450 and 460 (1973); see also Sharon Steel Corp., 872 F.2d at 39. Kimmelman v. Port Authority of N.Y. (In re Kiwi Int'l), 344 F.3d 311, 318 (3d Cir. 2003). "The time for testing

whether there are material unperformed obligations on both sides is when the bankruptcy is filed."

Columbia Gas, 50 F.3d at 240. The question becomes "whether both parties have tendered adequate

performance of the contract at the time of the filing." See In re Sigel & Co., 923 F.2d 142, 144-45 (9th

Cir. 1991). Thus, a contract is executory under § 365 only if each party has an unperformed obligation

at the time of the bankruptcy filing that would constitute a material breach if not performed. Columbia

Gas, 50 F.3d. at 239-40. The materiality of any remaining unperformed obligation is evaluated

according to the relevant non-bankruptcy law. Id. at  240 n. 10.

   The parties do not dispute that the Debtors obligations under the Agreement, to wit, the closure

of the Debtors' business, remain unperformed. The dispute centers upon whether the City had

substantially performed its obligations under the Agreement at the time of the bankruptcy filing. Debtors

contend that the Agreement provides for the termination of their use of the Property for adult

entertainment in exchange for, among other things, the City's designation of the Property as an area in

need of redevelopment and adoption of an enhanced redevelopment plan for the Property so that the

Debtors could develop the property for high density residential use.[5] In contrast, the City argues that it

has fully performed by

(i) designating the  Property for redevelopment, (ii) considering and approving a redevelopment plan, (iii)

conducting public hearings to consider the redevelopment plan and (iv) enacting an ordinance to adopt the

plan.[6]

---

   [5]Declaration of David Lonski, dated November 17, 20006, docket # 247  ("Lonski Decl."), ¶
1

   [6]City's Final Submission, dated November 20, 2006, P.5.

10

This Court's analysis begins, as it must, with the text of the Agreement itself:

> (1) The Defendants [Debtors] abandon the otherwise permitted "go-go bar" use, nightclub use, all sexually oriented business use...and all other related uses at the Premises **in exchange** for a 24 month extension of the current sexually oriented business use of the Premises. The aforesaid uses at the Premises shall forever cease, are deemed abandoned and are unlawful uses at the [P]remises, except for the current extended use, which, at the conclusion of the 24 month extension shall likewise cease, be deemed abandoned and an unlawful use at the Premises....

> * * * * * * *

> (3) The subject property will be designated as a redevelopment area and subject of a redevelopment plan. (Emphasis Added).[7]

"It is generally said that, in interpreting the words of a contract, the courts seek the meaning and intention of the parties." 5 Corbin on Contracts § 24.5 at 15 (Perillo ed. 1998). However, the "actual intent of the parties is ineffective unless made known in some way in the writing. It is not the real intent but the intent expressed or apparent in the writing that controls." <u>Newark Publishers' Ass'n v. Newark Typographical Union No. 103</u>, 22 N.J. 419, 427 (1956). Wholly absent from the language of the Agreement is any reference to an obligation imposed upon the City to adopt an enhanced redevelopment plan permitting development of high density residential housing. Indeed, the text of the Agreement is clear that the consideration for the Debtors' agreement to cease permanently all contested uses of the Property is the City's concession to permit continued use of the premises for sexually oriented business for an additional 24 months. The cessation of such use does not appear to be

---

[7] Exhibit "C" to Lonski Decl.

11

conditioned upon the additional requirement (ultimately satisfied by the City approximately 15 months

prior to the bankruptcy filing) that the City designate the Property for redevelopment and adopt a

redevelopment plan. In light of the clear and unambiguous language of the Agreement, the Court's

analysis can end here, without consideration of the additional extrinsic evidence offered by the parties.

In Wellington v. Estate of Wellington, 359 N.J. Super. 484 (App. Div. 2003), the issue before the New

Jersey Appellate Division was whether parol evidence should have been used to interpret a divorce

agreement. In making its findings, the court held:

> Because the agreement is unambiguous within its four corners, the judge did not err in not
> considering all of the circumstances surrounding the making of the settlement agreement.
> "[E]xtrinsic and parol evidence is not admissible to create an ambiguity in a written agreement
> which is complete and clear and unambiguous upon its face." Intercontinental Planning Ltd. v.
> Daystrom, Inc., 24 N.Y.2d 372, 379, 300 N.Y.S.2d 817, 822, 248 N.E.2d 576, 580 (1969)
> (citations omitted). And, where there is no ambiguity, the surrounding circumstances need not
> be addressed. Riconda, supra (90 N.Y.2d at 738, 665 N.Y.S.2d at 396, 688 N.E.2d at 252).

(Wellington at 494-495).

This Court has reviewed the competing certifications and declarations submitted by John R.

Lanza, Esq. and David Lonski with respect to the contrasting versions of the negotiation process; as

can be expected, they offer little assistance since they reflect widely disparate views as to the underlying

intent of the parties in formulating the Agreement. Consequently, in reaching its decision, the Court

focuses its attention on the language of the document at issue.

The Agreement between the Debtors and the City is simple, straightforward and unambiguous

on its face. Nothing contained therein lends support to the Debtors' contention that the Agreement

remained an executory contract at the time the petition was filed because

the City failed to perform by granting the Debtors "enhanced development rights" when it

12

established and placed the Debtors' real property in a redevelopment zone. It is undisputed that by the

end of 2003, the City had afforded the Debtors the extended two year period to operate its sexually

oriented business, designated the Property for redevelopment and adopted a redevelopment plan. In

sum, the City had substantially performed its obligations under the Agreement. The doctrine of material

breach is simply the converse of the doctrine of substantial performance. Farnsworth on Contracts, 2nd

edition, Vol. 2, Part 3, § 8.16. Substantial performance is performance without a material breach, and a

material breach results in performance that is not substantial. Id. Returning to the definition of executory

contract set forth in Columbia Gas, supra , the City did not have any substantially unperformed

obligations under the Agreement at the time of the bankruptcy filing; consequently, the Agreement is not

executory and subject to rejection.

This Court is cognizant that its ruling is consistent with the December 23, 2004 judgment of the

Superior Court, subsequently vacated by the Appellate Division which remanded the matter for further

evidentiary hearings. However, the ruling herein is not at odds with the Appellate Division's directive.

Indeed,  the remand order from the Appellate Division expressly states that the Debtors are foreclosed

from challenging the merits of the redevelopment plan since the Debtors failed to appeal the City's

action within the requisite forty-five (45) day period to bring the appropriate action.[8]  "[S]uch a

---

[8]For this reason, this Court accords little weight to the Declaration of Peter Steck, P.P., AICP, and the expert report annexed as Exhibit "A" thereto, in which he offers his opinion as to the defective nature of the City's redevelopment plan and efforts. The Appellate Division reaffirmed the opinion of the trial court that challenges to the redevelopment plan by the Debtors were barred procedurally. Indeed, the record herein does not identify any timely challenges to the redevelopment plan by the Debtors or third parties.

challenge could and should have been raised by way of action in lieu of prerogative writs." [9]The

Appellate Division, specifically making no findings as to the merits of the alleged breach of contract by

the City, sought to afford the Debtors with an opportunity to argue that the City's alleged *delays* in

approving a redevelopment plan prejudiced the Debtors' ability to convert the Property to an

alternative use. In this regard, the Appellate Division suggested that proof of such delays may give rise

to an equitable remedy of extending the deadline for closure of the business.[10] There is nothing in the

remand order to suggest that the City had not fulfilled its obligations under the Agreement. The Court

notes that we are approaching nearly two years from the date of the remand order and the business

continues to operate; clearly, there is no longer a  need for the "equitable remedy" as suggested by the

Appellate Division.


IV.    **CONCLUSION**

In light of this Court's finding that the City substantially performed its obligations under the

settlement with the Debtors, the Agreement cannot be viewed as executory and capable of rejection.

Accordingly, the Court denies the within Motion and need not address or make findings with respect to

the Debtors' alleged "bad faith" in seeking such rejection or whether rejection of the Agreement as an

executory contract would somehow interfere with the City's enforcement of its "police powers" .

---

[9]Appellate Order dated January 5, 2005, Ex. "D" to Lonski Decl.

[10]<u>Id.</u>

14

.